[No. F018056. Fifth Dist. Oct. 4, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN KEITH FRANCO, Defendant and Appellant.

[No. F019123. Fifth Dist. Oct. 4, 1993.]

In re BRIAN KEITH FRANCO on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of Facts, part I and part III of the Discussion.*

**COUNSEL**

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Garnand Venturi and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## FRANSON, J.*—

### STATEMENT OF THE CASE

On March 6, 1992, a 10-count information was filed in Tulare County Superior Court, charging appellant Brian Keith Franco (also listed in court records as Keith Brian Franco) with attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 1; victim Michael Richmond), assault with a firearm on a peace officer (Pen. Code, § 245, subd. (d)(1); counts 2, 3, and 4; victims Michael Richmond, Tom Crowell, and Jason Lightner, respectively); resisting an executive officer (Pen. Code, § 69; counts 5, 6, 7, and 8; victims Michael Richmond, Tom Crowell, Jason Lightner, and Randy Smith, respectively); willful infliction of corporal injury on spouse (Pen. Code, § 273.5, subd. (a); count 9; victim Lori Franco); and child endangerment (Pen. Code, § 273a, subd. (1); count 10; victim Keith Charles Franco). It was further alleged in conjunction with each count that Franco personally used a firearm in commission of the offense (Pen. Code, § 12022.5, subd. (a)). Intentional infliction of great bodily injury on Michael Richmond (Pen. Code, § 12022.7) was alleged as to counts 1, 2, and 5. Franco pleaded not guilty and denied all special allegations.

Trial began on May 4, 1992. On May 7, the jury found Franco not guilty of attempted murder as charged in count 1, but guilty of the lesser included offense of attempted voluntary manslaughter (Pen. Code, §§ 192, subd. (a), 664). The jury acquitted Franco of count 8 (resisting executive officer Randy Smith) and found not true the attendant firearm use allegation, but convicted Franco on all remaining counts. All other special allegations were found to be true. Franco was subsequently sentenced to prison for a total term of 19 years 8 months. He was awarded custody credits totaling 189 days, and was ordered to pay $13,183.61 in restitution to the City of Woodlake.[1] This sum represented the amount of workers' compensation benefits paid by the City of Woodlake to Officer Richmond, the officer whom Franco shot and injured.

Franco filed a timely notice of appeal (F018056). He subsequently filed a petition for writ of habeas corpus with this court (F019123). The cases have been consolidated.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]The abstract of judgment erroneously terms this a restitution fine.

## STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I. *Ineffective Assistance of Counsel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. *Award of Restitution to the City of Woodlake*

Appended to the report of the probation officer (RPO) was a letter from the City of Woodlake (hereinafter the City) to the district attorney. In the letter, the City announced its intention, pursuant to Labor Code section 3852, to collect restitution from Franco for workers' compensation benefits paid to Officer Richmond. As of April 29, 1992, the City had paid a total of $13,183.61 in temporary disability indemnity and medical expenses. The probation officer recommended that Franco be ordered to pay that amount to the City as restitution, pursuant to Government Code[12] section 13967, subdivision (c).

At the sentencing hearing, the trial court denied probation and imposed a prison term. The hearing on how the term should be calculated was lengthy. The following is all that was said regarding restitution:

"[THE COURT:] Okay. There is no possibility that he's going to be able to pay the restitution pursuant to the City of Woodlake in my viewpoint, $18,000, based on all the time that I've given him here. Is there?

"Ms. SHARLEY [probation officer]: Well, under Government Code section 13967(c) I think it becomes a civil judgment once he's released. And I don't know if the state will collect it from him when he's on parole or not. But that has changed, that we are ordering it—are recommending it be ordered under 13967(c) of the Government Code.

"THE COURT: That will be the order $13,183.67 [*sic*] restitution pursuant to 13967(c). Although, that judgment will probably be—

"Ms. SHARLEY: It's a civil judgment.

"THE COURT: It's a civil judgment. It only lasts for ten years unless someone tries to renew it. And you're going to be in jail for most of that time, so unless they're going to collect it in jail."

---

*See footnote, *ante*, page 175.
[12]Further statutory references are to the Government Code unless otherwise stated.

Franco now contends the trial court could not order direct restitution to the City. He argues the City was not a direct victim of the crime, and that the instant case is governed by—or at least analogous to—those cases which hold direct restitution is not payable to insurance companies who reimburse crime victims. The Attorney General counters that because workers' compensation benefits are mandated by statute, as opposed to being the result of a contractual obligation, the insurance cases are inapposite and the City's losses are direct losses which are subject to a restitution order.

There are no cases directly on point. After a review of the various authorities, however, we have concluded the City is not a "victim" within the meaning of the relevant statute; hence, restitution was improperly ordered. The City may pursue its remedies under Labor Code section 3852,[13] and this case must be remanded for further proceedings.

Subdivision (a) of section 13967 mandates imposition of a restitution fine where the defendant has been convicted of one or more felonies. The fine cannot exceed $10,000. Subdivision (c) provides in pertinent part:

"In cases in which a *victim* has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the *victim*. . . . Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . .

"Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the *victim*, *or victims*, for all determined economic losses incurred as the result of the defendant's criminal conduct. . . ." (Italics added.)

Resolution of Franco's contention turns on whether the City is a "victim" within the meaning of section 13967, subdivision (c). Section 13967 is part

---

[13]Labor Code section 3852 provides: "The claim of an employee, including . . . any peace officer . . . , for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation . . . , may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee . . . ."

of article I of chapter 5 of the Government Code. The purpose of this article is "to assist residents of the State of California in obtaining restitution for pecuniary losses they suffer as a direct result of criminal acts." (§ 13959.) The article includes section 13960, subdivision (a) of which defines "victim" "[a]s used in this article." The City does not fall within any of the definitions contained in section 13960, subdivision (a).

Recently, however, the California Supreme Court determined that section 13967, subdivision (c) is not subject to section 13960's definition of the term "victim." (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1076 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) In *Broussard*, the defendant was ordered to pay restitution to the victims of property crimes for which he was sentenced to prison. On appeal, he contended that the definition of "victim" contained in section 13960 prevented imposition of a restitution order under section 13967, subdivision (c) where the victim suffered economic loss unaccompanied by any physical injury. (5 Cal.4th at pp. 1069-1070.)

The Supreme Court disagreed. It declined to follow the plain meaning of the statute. It found that to do so would lead to a conclusion that the Legislature knowingly violated the imperative of article I, section 28, subdivision (b) of the California Constitution, which in turn would be an absurd construction of the statute.[14] It further found that the history of section 13967 showed the Legislature intended to implement the constitutional mandate. (*People* v. *Brousard*, *supra*, 5 Cal.4th at pp. 1071-1072.)

The first legislation enacted following Proposition 8 required trial courts to order restitution from defendants convicted of crimes and placed on probation. However, the Legislature failed to enact legislation which required or authorized trial courts to order restitution where the defendant was not given probation. In such cases, victims of violent crimes had an indirect remedy through the restitution fund, but victims of nonviolent crimes had no recourse but to sue the defendant. (*People* v. *Broussard*, *supra*, 5 Cal.4th at pp. 1072-1073.)

This legislative omission was noted in *People* v. *Downing* (1985) 174 Cal.App.3d 667, 672 [220 Cal.Rptr. 225]. As a result, legislation was

---

[14]Article I, section 28, subdivision (b) of the California Constitution was part of Proposition 8. It states: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

proposed in 1986 which would have added Penal Code section 1202b. That statute would have required trial courts to order restitution paid to the victim in any case in which the defendant was not granted probation. The California Supreme Court noted that because this statute would have been contained in the Penal Code, it would not have been subject to the definition of "victim" contained in section 13960. (*People* v. *Broussard, supra,* 5 Cal.4th at p. 1074.) However, during the course of its enactment, the bill was changed to provide for an amendment to section 13967. (*Broussard, supra,* at p. 1074.)

The California Supreme Court concluded that the purpose of subdivision (c) of section 13967 was to "plug the gap" that remained after the initial legislation responding to article I, section 28, subdivision (b) of the California Constitution, and to "correct the anomaly in the statutory scheme" noted in *Downing.* (*People* v. *Broussard, supra,* 5 Cal.4th at p. 1075.) It found that the defendant's construction of section 13967, subdivision (c) as permitting a restitution order for economic loss only when accompanied by physical injury would lead to arbitrary and capricious results: "Under defendant's view of the statute, if a thief grabbed a purse from a woman without injuring her, the victim could not receive restitution for the money stolen, but if the thief bruised the victim's arm in the process, the victim could receive restitution for the loss of the money. We can think of no explanation why the Legislature could have desired such an unlikely result, and defendant advances none." (*Broussard, supra,* at p. 1077.) Accordingly, the court construed section 13967, subdivision (c) to require a trial court to order restitution "in any criminal case in which a defendant is denied probation and in which the victim has suffered economic loss, irrespective of whether the defendant inflicted physical injury on the victim." (*Broussard, supra,* at p. 1077.)

*Broussard* concerns restitution only where a direct victim—i.e., that person who suffers the immediate loss—is involved. The Supreme Court has granted review of a number of cases which concern whether restitution can be ordered to an institutional victim. (E.g., *People* v. *Crow\** (Cal.App.) [restitution to welfare department in prosecution for welfare fraud]; *People* v. *Gregg\** (Cal.App.) [same].)[15] Interestingly, several cases involving restitution to an indirect victim such as an insurance company have had review

---

*For Supreme Court opinion in *People* v. *Crow,* see 6 Cal.4th 952; in *People* v. *Gregg,* review dismissed March 3, 1994, and cause remanded to Court of Appeal, Third Appellate District.

[15]The Attorney General says review has also been granted in *People* v. *Bailey* (Sept. 16, 1992) D014711,† an unpublished opinion involving restitution to an institutional victim of fraudulent workers' compensation claims.

†Reporter's Note: Review (S029484) dismissed as improvidently granted October 21, 1993.

denied, even though they rely, to a large extent, on the applicability of section 13960's definition of "victim," which was rejected in *Broussard*.

The leading case in the insurance area is *People* v. *Williams* (1989) 207 Cal.App.3d 1520 [255 Cal.Rptr. 778]. There, the victim, who was injured by the defendant, was partially compensated by her insurance company. At issue on appeal from the defendant's criminal conviction was whether the trial court could order the defendant to pay restitution to the insurer. (*Id.* at p. 1522.) The Court of Appeal summarized its holding, striking the order, as follows: "Government Code section 13967, subdivision (c) provides that restitution be paid to the victim of the crime. An insurer does not become a victim because it compensated an insured person who is injured by criminal conduct. The trial court in this criminal proceeding was without jurisdiction to affix civil liability." (207 Cal.App.3d at p. 1522.)

The *Williams* court agreed with the defendant's contention the statute requires payment to the victim, not to a third party. (*People* v. *Williams*, *supra*, 207 Cal.App.3d at p. 1523.) In so doing, the court examined the definition of "victim" contained in section 13960, subdivision (a) and found that the insurance company met none of those definitions. (207 Cal.App.3d at p. 1523.) It concluded:

"Restitution serves the dual purpose of rehabilitating the offender and deterring future criminal conduct. [Citation.] When appropriately imposed, restitution 'may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole.' [Citation.] The trial court's restitution order here makes Allstate Insurance whole, not the victim of the crime.

"The People argue that Allstate Insurance is the functional equivalent of a 'victim' because it recompensed Rodarte [the injured person] for losses caused by Williams's criminal conduct. This overlooks the contractual nature of Allstate's obligations to Rodarte, who was entitled to compensation because of premiums she paid to her insurer. That Allstate made good on its obligation does not make it the victim of a crime.

"The People analogize Allstate's position to that of an apartment building owner who does not live in the building but whose property is damaged by an arsonist, or to that of a corporate owner of a bank whose branch has been robbed. These situations are distinguishable. The apartment building owner and the corporate bank owner have ownership interests in the damaged or stolen property, and thus are victims of the respective crimes. Here Rodarte,

not Allstate Insurance, had a possessory interest in the damaged car and had to seek medical treatment as a result of the incident.

"... . . . . . . . . . . . . . . . . . . . . . . .

"This restitution order is in effect a civil judgment for damages against Williams, payable to Allstate on a subrogation theory. [Citation.] Whether Allstate is entitled to such damages is not a matter over which the trial court had jurisdiction. '[C]ivil liability cannot be a function of restitution in a criminal case.' [Citation.] The criminal judicial process should not be ' " ' . . . used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency.' " [Citations.]' [Citation.]

"Because the trial court's error was jurisdictional, we reject the People's argument that Williams waived the error by not raising it below. [Citation.]" (*People* v. *Williams, supra*, 207 Cal.App.3d at pp. 1523-1524.)

*Williams* was followed, both in time and reasoning, by *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141] (review den.), which also concerned restitution to an insurance company. The next case on the subject, *People* v. *Miller* (1989) 216 Cal.App.3d 758 [265 Cal.Rptr. 77] (review den.), concerned a portion of a restitution *fine* which was ordered paid to a special investigations bureau. The appellate court determined that assessment of a restitution *fine* was proper, as such a fine is not related to whether there is a direct victim as defined in section 13960. (216 Cal.App.3d at pp. 760-761.) However, it could not be paid to the bureau, because the bureau was not a crime victim as defined in that section. (*Id.* at p. 762.)

Restitution to an insurance company was also discussed in *People* v. *Zito* (1992) 8 Cal.App.4th 736 [10 Cal.Rptr.2d 491] (review den.). In that case, the defendant was convicted of various offenses arising out of the embezzlement of money from the California State Automobile Association (CSAA). The RPO indicated CSAA may have received compensation from its insurer. The appellate court agreed with the reasoning of *People* v. *Williams, supra*, but held that since the defendant failed to raise the issue of insurance compensation when the trial court imposed restitution, that aspect was waived. (8 Cal.App.4th at pp. 739, 742-743.)[16]

 In our view, the reasoning of *Williams* and its progeny is persuasive aside from any reliance on the definitions contained in section 13960.

---

[16]While factual issues are subject to waiver, those which involve the trial court's power to impose the restitution aspect of sentence are not. (*People* v. *Zito, supra*, 8 Cal.App.4th at pp. 741-742.) As the issue in the case at bench concerns the trial court's power to order direct

Nothing in the history of section 13967, subdivision (c), as discussed in *Broussard*, indicates the Legislature intended to make insurers whole, at least in situations in which the insurer was not a direct victim of the crime. Moreover, to interpret subdivision (c) of section 13967 to cover indirect victims without express language to that effect raises significant questions as to who could receive restitution. For example, would restitution be available to someone who loaned money to the direct victim in order to cover expenses incurred pending receipt of restitution? Absent an express or clearly implied legislative intent, section 13967, subdivision (c) should not be interpreted so as to afford restitution to those who are only indirectly affected by the crime.[17]

In addition, according to the California Supreme Court, subdivision (c) of section 13967 was enacted pursuant to the mandate of California Constitution, article I, section 28, subdivision (b), and to respond to the anomaly (noted in *People* v. *Downing, supra*, 174 Cal.App.3d 667) that occurred when the victim suffered a purely economic loss and the defendant was sentenced to prison instead of being placed on probation. Nothing in the constitutional amendment or *Downing* suggests concern with "losses" suffered by insurers as a result of their compensation of direct victims of crime. Nor is an interpretation of section 13967, subdivision (c) which excludes the direct victim's insurer from the scope of the statute, inconsistent with the language or intent of article I, section 28, subdivision (b) of the California Constitution, that restitution be ordered in every case "in which a crime victim suffers a loss . . . ."

Finally, construing the statute to exclude insurers does not lead to arbitrary and capricious results. The direct victim is still made whole, either through insurance or through restitution. The burden inherent in seeking a civil judgment then falls on the insurer, which in most cases is better able to "bear the costs and endure the rigors of seeking civil judgments." (Cf. *People* v. *Downing, supra*, 174 Cal.App.3d at p. 672.)

Accordingly, it is reasonable to conclude that under the circumstances present here, the trial court was without authority to order restitution to the City. ■ The fact section 13967, subdivision (c) permits a restitution order to be enforceable as a civil judgment does not transform the disposal of any and all civil liability into a function of restitution in a criminal case.

restitution to the City, the People do not contend Franco waived the issue by failing to object at the time of sentencing.

[17]Section 13960 shows the Legislature knows how to define and include indirect victims if it chooses to do so.

(Cf. *People* v. *Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Williams, supra,* 207 Cal.App.3d at p. 1524.)

■ The Attorney General seeks to distinguish the *Williams* line of authority on the ground that workers' compensation payments are mandated by statute and are not made pursuant to a contractual obligation, as existed between the insurance companies and victims in those cases. It is true that an employer's liability to pay workers' compensation arises from the law itself and is not merely a contractual obligation. (*Alaska Packers Assn.* v. *Indus. Acc. Com.* (1934) 1 Cal.2d 250, 256 [34 P.2d 716]; *North Alaska Salmon Co.* v. *Pillsbury* (1916) 174 Cal. 1, 2 [162 P. 93].) In our view, however, this is a distinction without a difference. Regardless of the basis for its status, under the facts of this case, the City stands in the position of Officer Richmond's insurer. That it made good on the obligation imposed upon it "does not make it the victim of a crime." (Cf. *People* v. *Williams, supra,* 207 Cal.App.3d at p. 1523.) To hold otherwise would lead to anomalous results based on the type of insurance involved.

Since remand is required, the issue arises whether the court can order restitution to Richmond for funds already paid to him by the City. "A restitution order under Government Code section 13967, subdivision (c) may not exceed the victim's losses, defined as 'any expenses for which the victim has not and will not be reimbursed from any other source.' (Gov. Code, § 13960, subd. (d).)" (*People* v. *Williams, supra,* 207 Cal.App.3d at p. 1524; see also *Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 221 [234 Cal.Rptr. 316] (conc. opn. of Sparks, J. ["The upshot of all this is that when a victim receives money from any source on account of the injuries suffered as the result of a crime, that sum must be deducted from his claim."].) This reasonably should be the result regardless of the applicability of the definitions of "victim" contained in section 13960; the intent of section 13967, subdivision (c) and California Constitution, article I, section 28, subdivision (b) is to make the victim whole, not afford a double recovery.

In short, that portion of the sentence ordering payment of restitution to the City must be stricken. The City should be left to whatever other remedies it may have available. (See, e.g., *Del Monte Corp.* v. *Superior Court* (1982) 127 Cal.App.3d 1049, 1051-1052 [179 Cal.Rptr. 855]; Lab. Code, § 3852.) The matter must be remanded to the trial court for a determination whether

to impose the mandatory restitution fine pursuant to section 13967, subdivision (a).[18]

III. *Award of Time Credits**

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgments of conviction are affirmed; the restitution order is stricken and the case is remanded for further proceedings with regard to imposition of a restitution fine and award of time credits. The writ petition is denied.

Stone (W. A.), Acting P. J., and Harris, J., concurred.

The petitions of both respondent and appellant for review by the Supreme Court were denied December 30, 1993.

---

[18]On appeal, neither party addresses the issue whether the trial court may impose this fine when it was not imposed in the first instance. Under the circumstances of this case, there was no reason for the court to impose a fine since, if restitution ordered paid directly to the victim exceeds $10,000, an offset or credit reduces to zero the maximum allowable restitution fine. (*People* v. *Cotter* (1992) 6 Cal.App.4th 1671, 1677 [8 Cal.Rptr.2d 606].) Had the court realized it could not order direct restitution, it undoubtedly would have imposed a restitution fine, which is mandatory. In any event, if Franco has anything to present on this point, he can do so to the trial court.

*See footnote, *ante*, page 175.