[No. A064123. First Dist., Div. Two. Mar. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
HANK SCOTT SEXTON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A of the Discussion.

COUNSEL

James D. Rodseth, under appointment by the Court of Appeal, for Plaintiff and Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Mark S. Howell, Deputy Attorneys General, for Defendant and Appellant.

OPINION

**PHELAN, J.**—Defendant Hank Sexton appeals from a judgment of conviction after his guilty plea. He challenges the conditions of his grant of probation requiring restitution. We conclude that the court could properly order a restitution fine equaling the statutory minimum despite its finding that defendant lacked the ability to pay and, in the published portion of the opinion, that the court could not order restitution to a third party insurer whose only "injury" resulted from payments to the victim under a contract of insurance.

## BACKGROUND

On July 21, 1993, defendant pleaded guilty to charges of auto theft (Veh. Code, § 10851) and failure to appear (Pen. Code, § 1320, subd. (b)). The

court admonished defendant that as a result of the plea he could "be liable for up to a $10,000 fine and restitution if it's appropriate."

The probation officer reported that the charges arose on April 9, 1993, when deputies saw a speeding 1987 Toyota Camry with a burned-out taillight. They stopped the vehicle. Its two occupants attempted to flee. One of them, defendant, was apprehended. He admitted stealing the car in Oregon. He failed to appear for a preliminary hearing on May 27, and a bench warrant issued. He surrendered to authorities on July 7.

The probation report noted the car owner's statement that "there was extensive damage done to the interior of her car, and the car has numerous scratches. Her deductible was $350.00. The remainder was paid by her insurance company." The report indicated that defendant, who was 18 years old, had an 11th grade education. Under "Employment Record," the officer wrote, "The defendant states he is a boat detailer, has worked at a tire shop, and has cleaned lots and horse stalls." His "current income" was listed as "none." The report stated, "The defendant's parents provide him with room and board. He does own a 1974 Scout, which is non-operable." The report recommended that defendant be placed on probation on the conditions, among others, that he pay $350 restitution to the victim, based on the deductible under her insurance policy, and $200 to the victims' restitution fund.

At the sentencing hearing on August 13, the court suspended imposition of sentence and granted three years' probation on substantially the terms recommended, including orders that defendant pay $200 to the victims' fund, $350 to the victim, a $225 presentence investigation fee, and a monthly $25 supervision fee. Defense counsel stated, however, that defendant "dispute[d] any damage to the vehicle," and requested a "restitution hearing." The court scheduled a restitution hearing.

At the September 10 restitution hearing the prosecution relied upon the owner's responses to a form questionnaire prepared by the deputy probation officer. The owner stated $3,317.95 as her "[d]ollar amount of loss and/or medical expenses." She indicated that she had been insured by Allstate Insurance Company, that the amount of her deductible was $350, and that she had incurred an estimated $25 in other unreimbursed expenses. Attached to the report was a handwritten tabulation of the damages suffered and the amount paid by Allstate. The largest items were $1,714.32 for "[c]ost to repair damage done to car," $704.85 for "[r]eplacement cost for car content," and $393.50 for "[c]ost to transport car back to West Linn & buy new license plates & register car." The owner noted that she had prepared her

response while away from home and without access to all of her records. She advised the probation department that they could contact Allstate directly to obtain the insurance records of the damages paid. The only independent documentation included was an invoice from a car dealership indicating a charge of $76.70 to "chk out vechicle and make estimate" and "replace nec fuses." (*Sic.*) The invoice reflected a "preliminary estimate" of $500.

Defendant testified that when he first got into the car, "[t]he gear shift looked like it was chewed on, and in the back seat there was a blanket, and it had dog hairs all over it." When he left the car, its condition was unchanged, "[j]ust with a few more miles." He also testified that he was not employed, was not receiving any government assistance, and had been living with his mother. In his last job about four months previously he cleaned horse stalls at a fair earning "about a hundred dollars" in about two weeks. About a year earlier he earned "about $300" by "cleaning lots." Asked if he had any disabilities, he testified that he was "partly blind in one eye," and that he couldn't "think so fast" because, at the age of six, he was hit by a truck "and half my skull got shattered." On cross-examination he admitted that he helped switch the Oregon plates on the car for California plates, and that he smoked.[1]

The prosecution cited *People* v. *Foster* (1993) 14 Cal.App.4th 939 [18 Cal.Rptr.2d 1], review denied, for the proposition that "insurance companies may be considered victims for the purpose of . . . restitution." (*Id.* at pp. 948-954.) Defense counsel did not contest this point, but challenged the supporting documentation as unreliable hearsay. He questioned certain specific items and added, "without a breakdown and some kind of accurate assessment, these bills could be for existing damages. It doesn't even say that these were damages which occurred during the offense." Counsel contended that given the participation of the codefendant, defendant should be ordered to pay only half of the total sum.

Defense counsel further asserted that the evidence established that defendant "does not have the ability to pay." The prosecutor replied that "ability to pay is separate and distinct from how much restitution," urging the court to "set the amount of restitution and bring this matter back" for review "approximately two months after his release date."

After taking the matter under submission, the court issued a written order fixing a "restitution sum" of $3,317.95, payable in stated amounts to the victim and her insurance carrier, in installments to be determined by the

---

[1]The owner's itemization of damages included a payment of $50 "to clean [car] (to [get] rid of smoke smell."

probation officer.[2] Defendant's notice of appeal was filed December 10, 1993.[3]

## DISCUSSION

### A. *Ability to Pay**

. . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Restitution to Insurer*

██ Appellant contends the trial court could not properly order payment of restitution to the victim's insurer. ██ We first address respondent's claim that any objection of this nature was waived by appellant's failure to raise it in the trial court. In support of this contention respondent cites *People* v. *Zito* (1992) 8 Cal.App.4th 736, 742-743 [10 Cal.Rptr.2d 491], review denied. The objection there, however, was that the court failed to consider the victim's possible receipt of insurance proceeds in determining restitution due *to the victim*. In contrast, an objection may be raised for the first time on appeal where it concerns an "unauthorized" sentence, i.e., one which "could not lawfully be imposed under any circumstance in the particular case." (*People* v. *Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040] ["claims deemed waived on appeal involve sentences

---

[2]The order states as follows:

"The evidence presented establishes that as a result of the acts of the defendant and others the Allstate Insurance Company was damaged in the sum of $2942.95 and the owner of the vehicle . . . was damaged in the sum of $375.00.

"The restitution sum is fixed at $3317.95.

"The defendant is presently in custody and has no immediate ability to pay restitution. The defendant, however, shall upon his release from custody make payments toward the restitution sum in installments at such times and amounts as may be set by the probation officer. If the defendant is dissatisfied with the terms of payments established by the probation officer he may return to court for a review thereof by the court. The probation officer shall file an annual report with the court so long as the defendant remains on probation setting forth the amount of restitution paid and the defendant's then present ability to pay restitution."

[3]Respondent suggests the notice of appeal was untimely under California Rules of Court, rule 31(a), which provides that an appeal from an order in a criminal case must be filed within 60 days after "the making of the order." The question is what was the date of "making" of the restitution order for purposes of beginning defendant's time to appeal. The order bears no filing date, but indicates that it was signed on October 9, 1993, a Saturday. Under Code of Civil Procedure section 135, Saturday is a holiday. Therefore the court could not conduct business on that day (*id.*, § 133) unless the judges of the court so "prescribe[d]" (*id.*, § 134, subd. (c)). Even assuming they had done so, Saturday could not be counted "for purposes of computing the time required for the conduct of any proceeding nor for the performance of any act." (*Id.*, subd. (d).) The following Monday, October 11, was Columbus Day, also a judicial holiday. (Gov. Code, § 6700, subd. (k).) Accordingly, the order must be deemed made no earlier than Tuesday, October 12. The notice of appeal was filed on December 10, the 59th day after October 12. The appeal was therefore filed within the 60-day limit of rule 31(a).

*See footnote, *ante*, page 64.

which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner"].) Applying this principle in the context presented here, courts have concluded that a defendant may object for the first time on appeal to a restitution order in favor of an insurance carrier. (*People* v. *Williams* (1989) 207 Cal.App.3d 1520 [255 Cal.Rptr. 778] [order was beyond sentencing court's jurisdiction]; *People* v. *Foster, supra,* 14 Cal.App.4th at p. 949 [upholding order, but rejecting waiver argument]; *People* v. *Franco* (1993) 19 Cal.App.4th 175, 183, fn. 16 [23 Cal.Rptr.2d 475], review den. [factual issues subject to waiver rule but the power to order restitution is not].) We conclude that the objection was not waived by failure to assert it below. We therefore turn to the merits.

■ The cases are divided on the question whether a sentencing court can order the defendant to pay restitution to a victim's insurer. (See *People* v. *Foster, supra,* 14 Cal.App.4th at pp. 948-954 [upholding order]; *People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 572-573 [193 Cal.Rptr. 394] [same]; *People* v. *Alexander* (1960) 182 Cal.App.2d 281, 292-293 [6 Cal.Rptr. 153] [same]; but see *People* v. *Williams, supra,* 207 Cal.App.3d 1520 [restitution order under Gov. Code, former § 13697, subd. (c) in favor of victim's insurer was in effect an unauthorized civil judgment for subrogation]; *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999 [262 Cal.Rptr. 141] [agreeing with *Williams;* "an insurance company is not a victim" for purposes of restitution under Gov. Code, former § 13967, subd. (c)]; *People* v. *Wardlow* (1991) 227 Cal.App.3d 360, 368-371 [278 Cal.Rptr. 1] [following *Williams* in probation context, refusing to uphold order of restitution in favor of indirect victims]; *People* v. *Franco, supra,* 19 Cal.App.4th 175, 182-185 [workers' compensation benefits paid to victim police officer not subject to restitution under former § 13967, subd. (c)].)

We need not take sides in this controversy because, during the pendency of this appeal, the Legislature enacted amendments to the relevant statutes which we find to be dispositive. (Stats. 1994, ch. 1106, No. 11 West's Cal. Legis. Service, pp. 5446-5455.) In particular, Penal Code section 1203.04, subdivision (j), now provides, "Nothing in this section shall prevent a court from ordering restitution to any . . . legal or commercial entity *when that entity is a direct victim of a crime.*"[6] (Italics added.) We conclude the clear implication of the italicized phrase is that the statutes do *not* contemplate restitution to an "indirect" victim.

The Legislature's reference to "direct" victims manifestly incorporates the well-established dichotomy existing in the law which distinguishes between

---

[6]The amendments were enacted as an urgency measure and became effective when approved by the Governor on September 28, 1994. (Stats. 1994, ch. 1106, § 9, No. 11 West's Cal. Legis. Service, p. 5455.)

"direct" and "indirect" victims for purposes of restitution. A "direct" victim is the "object" of the crime committed. (See *People* v. *Crow* (1993) 6 Cal.4th 952, 957-958 and fn. 4 [26 Cal.Rptr.2d 1, 864 P.2d 80].) By authorizing restitution orders limited to entities which are "direct" victims, the Legislature necessarily intended to exclude entities which are "indirect" victims from such authorization. As the *Franco* court observed, "[T]he Legislature knows how to define and include indirect victims if it chooses to do so." (*People* v. *Franco, supra,* 19 Cal.App.4th at p. 184, fn. 17.)[7] Thus, an insurer who has incurred expenses solely by virtue of a contractual duty to indemnify the direct victim is not itself an "object" of the crime and hence not a direct victim. It cannot, therefore, be the recipient of a section 1203.04 restitution order unless it is itself a direct victim of criminal conduct.

██ We also conclude appellant is entitled to the benefit of the legislative removal of the uncertainty as to the power of a court to order restitution paid to an insurer of a direct victim. "[I]n the absence of a savings clause or some other indication of legislative intent to the contrary, when a criminal statute is amended to reduce the possible punishment for a prohibited act, the defendant in any case not yet final is entitled to the benefit of the lower punishment." (*Henry* v. *Municipal Court* (1985) 171 Cal.App.3d 721, 724 [214 Cal.Rptr. 726], review den., citing *In re Estrada* (1965) 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948].) For purposes of this rule, a case is "final" when the judgment is immune from direct review. (*In re Pine* (1977) 66 Cal.App.3d 593, 595-596 [136 Cal.Rptr. 718].) Therefore, "[a]bsent a savings clause, a criminal defendant is entitled to the benefit of a change in the law that occurs during the pendency of his or her appeal." (*People* v. *Figueroa* (1993) 20 Cal.App.4th 65, 70 [24 Cal.Rptr.2d 368], review den.) Thus, even if we were to conclude that the cases upholding restitution to insurers are the correct interpretation, we find appellant is entitled to the ameliorative effects of the 1994 amendments.[8]

██ Our conclusion that the insurer in this case cannot be the beneficiary of a restitution order does not mean that appellant gains a windfall. We

___

[7]When the Legislature enacted Penal Code former section 1203.04, it rejected a version which defined "victim" as an individual or entity "who or which suffers personal injury or property damage or loss caused, *directly or indirectly,* as the result of the commission by the defendant . . . of the crime . . . ." (Sen. Bill No. 593 (1983-1984 Reg. Sess.) as amended July 15, 1983, § 2, p. 7, and § 4, p. 11, italics added.) Sen. Bill No. 593 failed passage. (Sen. Final Hist. (1983-1984 Reg. Sess.) p. 379.)

[8]The Supreme Court presumably reached the same conclusion when, after granting review in a number of cases raising this issue, it dismissed them under California Rules of Court, rule 29.4(c). (*People* v. *Severns* (1994) 29 Cal.App.4th 1015 [30 Cal.Rptr.2d 297] review granted July 1, 1994 (S040423) and dism. Feb. 16, 1995; *People* v. *Bruce* (1994) 29 Cal.App.4th 1025 [30 Cal.Rptr.2d 303] review granted July 28, 1994 (S040404) and dism. Feb. 16, 1995; *People* v. *Jimenez* (1994) 27 Cal.App.4th 55 [32 Cal.Rptr.2d 572] review granted Nov. 3, 1994 (S042027) and dism. Feb. 16, 1995; *People* v. *Martinez* (Mar. 24, 1994) E012405 [nonpub. opn.] review granted June 30, 1994 (S039678) and dism. Feb. 16, 1995; *People* v.

agree with the Attorney General that it makes no sense to excuse a defendant from paying restitution simply because of the fortuity that the victim has insurance coverage. A trial court, in its discretion, may still order the restitution paid to the victim and leave it to the insurer and the victim-insured to work out repayment under the terms of their insurance contract. In the event the insurer pursues its subrogation rights and obtains a judgment against appellant for the indemnified loss he would be entitled to a credit for any payments made to the insured-victim against the judgment for the "same" loss. (Pen. Code, § 1203.04, subd. (e).)

Alternatively, the trial court may conclude it is appropriate to impose a restitution fine commensurate with the amount of Allstate's payment under Penal Code section 1202.4, subdivision (a)(3)(A). (See *People v. Blankenship, supra,* 213 Cal.App.3d at p. 1000, fn. 10; cf. *People v. Miller* (1989) 216 Cal.App.3d 758, 763 [265 Cal.Rptr. 77].) Unlike *Blankenship,* this is not a case where it is "judicially uneconomical" to remand because of the "small financial benefit" to be gained by the restitution fund. The amount at issue here is substantial ($2,942.95). Thus, we conclude remand to the trial court is appropriate.

## DISPOSITION

The order directing payment of restitution to Allstate Insurance Company is vacated and the cause is remanded to the sentencing court for further proceedings consistent with this opinion. In all other respects, the order admitting appellant to probation is affirmed.

Kline, P. J., and Haerle, J., concurred.

---

*Perry* (Apr. 26, 1994) D019476 [nonpub. opn.] review granted July 21, 1994 (S040240) and dism. Feb. 16, 1995; *People v. Passons* (May 9, 1994) A061073 [nonpub. opn.] review granted Aug. 11, 1994 (S040556) and dism. Feb. 16, 1995; *People v. Loftis* (1994) 29 Cal.App.4th 1203 [30 Cal.Rptr.2d 196] review granted Aug. 11, 1994 (S040520) and dism. Feb. 16, 1995; *People v. Sargent* (1994) 30 Cal.App.4th 1057 [30 Cal.Rptr.2d 754] review granted Sept. 8, 1994 (S040990) and dism. Feb. 16, 1995; *People v. Adams* (Sept. 9, 1994) D019690 [nonpub. opn.] review granted Dec. 15, 1994 (S042704) and dism. Feb. 16, 1995.) Five of those cases involved published opinions which were deprived by the court's order of any precedential value. (See Cal. Rules of Court, rule 977.) We find it unlikely that the court intended to leave the Courts of Appeal completely at sea in the many pending cases raising similar issues. It seems more likely that the court expected these cases to be governed by the ameliorative amendments to the governing statutes.