Filed 9/9/15  P. v. Cheng CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TONY CHENG,<br><br>        Defendant and Appellant. | A142360<br><br>(San Francisco City & County<br>Super. Ct. No. SCN219984) |

**BY THE COURT:[1]**

        A jury convicted defendant Tony Cheng of one count of misdemeanor assault (Pen. Code, § 240),[2] a lesser included offense of assault with a deadly weapon not a firearm, and one count of vandalism exceeding $400 (§ 594, sub. (b)(1)), a wobbler, which the trial court had reduced to misdemeanor vandalism.  The trial court suspended imposition of sentence and placed defendant on three years probation subject to numerous conditions, including compliance with an individualized treatment plan in cooperation with the Probation Department.  We affirmed the judgment of conviction in appeal No. A139923.  The trial court subsequently ordered defendant to pay $400 in victim restitution.  Defendant appeals.  We affirm the restitution order.

---

        [1] Before Margulies, Acting P. J., Dondero, J., and Banke, J.

        [2] All further references are to the Penal Code unless otherwise indicated.

1

In our prior opinion in appeal No. A139923 we recited the underlying facts and procedural history, and now quote there from[3]:

"On November 28, 2012, the District Attorney for the City and County of San Francisco filed a three-count felony complaint alleging defendant committed:  (1) assault with a deadly weapon against Maradona Truong (§ 245, subd. (a)(1)) on November 26, 2012; (2) assault with a deadly weapon against Camille Rozeira (§ 245, subd. (a)(1)) on November 26, 2012; and (3) vandalism (§ 594, sub. (b)(1)).

"The complaint arose out of an incident at an Enterprise Car Rental office inside the Hotel Nikko in San Francisco, when defendant tried to renew a car rental.[4]  When defendant's credit card was declined, he presented Truong with a debit card.  The company's policy on the use of debit cards required the customer to provide two forms of proof of local residency.  Defendant became angry and began to walk away toward the door.  He then returned to the counter and threw each of the three computer monitors on the counter toward Truong.  One was broken beyond repair and had to be replaced; the other two, were repaired.  The wall behind the counter also had to be repaired, where one of the monitors hit it.

"On November 28, 2012, counsel was appointed for defendant, bail was set, time was not waived and a preliminary hearing was set.  After a time waiver, the preliminary hearing was continued several times until April 11, 2013.

"Truong and Rozeira testified at the preliminary hearing.  At the close of the hearing, the trial court held defendant to answer as to counts 1 (assault against Truong) and 3 (vandalism), and dismissed and discharged defendant as to count 2 (assault against

---

[3] We take judicial of our prior opinion on our own motion.  (Evid. Code, §§ 451, subd. (a), 452, subd. (b)–(c) & 459.)

[4] This summary of the incident is based on Truong's testimony at the preliminary hearing.

Rozeria). The court also granted in part a defense motion to reduce the charges to misdemeanors, and reduced the vandalism charge.[5]

"On April 24, 2013, the district attorney filed a two-count information, alleging (1) assault with a deadly weapon not a firearm against Truong (§ 245, subd. (a)(1)); and (2) vandalism exceeding $400 (§ 594, sub. (b)(1)). Defendant was arraigned the following day, time was not waived and the case was set for trial on June 24, 2013.

"Defendant made a number of in limine motions, including one to exclude a 2008 animal cruelty conviction (§ 597, subd. (b)) and one to allow testimony by his treating psychiatrist that he suffers from a mental illness and was psychotic on the day of the incident. As to the latter motion, defense counsel limited the proffered testimony to the misdemeanor vandalism charge, acknowledging there was no basis for its admission as to assault, a general intent crime. Counsel argued the evidence was relevant to the 'maliciousness' requirement of vandalism, but acknowledged this was 'murkier.'[6] The court denied the motion, concluding the law focused on the act of vandalism, itself, to show maliciousness, and thus was a matter for the jury to decide. The court further concluded that even if the evidence was of any relevance, other factors such as undue consumption of time and juror confusion, warranted its exclusion under Evidence Code section 352.

"Trial commenced with mini-opening statements and jury selection on June 20, 2013. Over the course of trial five witnesses testified, including Truong and Rozeira. All exhibits offered by defendant (three were withdrawn) were admitted into evidence.

"At the close of the prosecution's case, defendant moved for acquittal as to the assault charge, arguing no reasonable juror could find the computer monitors constituted

---

[5] If the damage caused by the act of vandalism is $400 or more, section 594, subdivision (b)(1), specifies the crime is punishable 'by imprisonment pursuant to subdivision (h) of Section 1170 or in a county jail not exceeding one year.' (§ 594, subd. (b)(1).)

[6] Section 594 provides in pertinent part: '(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own . . . is guilty of vandalism: [¶] . . . [¶] (2) Damages. (3) Destroys.'

3

'deadly' weapons. Counsel pointed out Truong had sustained only a jammed finger from deflecting the first thrown monitor. The court denied the motion, ruling it was for the jury to decide whether a monitor would be capable of inflicting serious bodily injury.

"Defendant then testified in his own defense. He is a graduate of Northwestern University with a degree in economics and international studies, and holds a master's degree in international policy studies from Stanford University and a master's degree in business administration from the European Institute for Business Affairs in Fontainebleau, France. At the time of trial he was 34. Since 2001, he has worked for five different companies, and since 2012 had been unemployed because of health issues. He had been renting a car for 'pleasure,' and also to store his belongings because he had 'just relocated' from Singapore. He had wanted to use Singapore-based credit and debit cards to 'draw down [his] accounts' there, and had numerous communications with Enterprise to try to do this. He finally went in person to the office on Mason Street. His interaction with Rozeira was unhelpful as she kept giving him 'confusing' rental information. He found this particularly disconcerting because he had spoken to her in advance and she knew he was coming in for a further rental. Truong then took over, and at some point took the rental car keys defendant had laid on the counter. This ma[d]e defendant 'upset' because he thought he had a right to the car for several more hours. When Truong told him his credit card had been declined, defendant thought he was lying. Defendant then presented a different card, and Truong asked for proof of local residency. Defendant had never had to supply that information before and claimed he had been using a debit card all along. Defendant was 'upset and angry' and asked to see the manager. Defendant then began taking photos with his iPad. Truong told him to stop and, according to defendant, began 'taunting' him with the car keys. Defendant then 'created a distraction' by pushing the computer monitors 'over the counter,' hoping this would provoke Truong to come up with 'a solution.' He denied throwing the monitors. A 'flood of security' from the Hotel Nikko entered, 'pinned' him against the wall and handcuffed him.

"The jury returned a verdict of not guilty on the felony assault charge, but guilty of the lesser included offense, simple assault, a misdemeanor (§ 240). It also found defendant guilty of vandalism. The jury was duly polled, confirming its verdicts were unanimous.

"Since defendant had not waived time for sentencing, the case was called for sentencing two days later, on June 28, 2013. The court stated it had read all submissions, including those by the defense concerning defendant's medical condition, which it ruled should be sealed. The court indicated its intended sentence would be suspended imposition, and three years' probation conditioned on serving 120 days' county jail (credit for time served of four days) but stayed on compliance with an individualized treatment plan prepared in cooperation with the Adult Probation Department. The prosecutor opposed the indicated sentence, arguing defendant was a danger and pointing to his prior animal cruelty conviction for starving six dogs 'to death while he was binging on methamphetamine' and that he was 'very lucky' no one had gotten seriously injured during the instant incident. Moreover, he showed 'no contrition.' The prosecution did not believe defendant would cooperate with anybody, and asked that 60 days be imposed for both the assault and vandalism, to run consecutively. Defense counsel asked that the matter be put over for further work with representatives of the Behavioral Health Court to see if a probation plan could be put together to both ensure public safety and address defendant's mental illness. Defendant then waived time for sentencing and agreed to undergo an assessment for the Intensive Supervision Program.

"On September 6, 2013, the court was advised defendant had been accepted into the program. The court then proceeded with sentencing, ordering the two counts to run concurrently, suspending imposition of sentence and placing defendant on three years' probation subject to numerous terms and conditions, including serving seven days in the county jail satisfied by credit for time served, and complying with the individualized treatment plan prepared by probation. The court further found defendant did not have any present ability to pay defense costs." (*People v. Cheng* (May 30, 2014, A139923) [nonpub. opn.].)

5

On June 20, 2014, the court held a restitution hearing. Defendant objected to the claimed $670 on the ground an e-mail from Enterprise Rent-a-Car setting forth the amount and the breakdown involved multiple levels of hearsay and was therefore insufficient to establish the validity of the claim.

The deputy district attorney explained this was an e-mail sent to her after speaking with the Regional Risk Supervisor at Enterprise Holdings, Ryan Smith, to whom she had been referred by the Enterprise local branch manager. The Supervisor explained Enterprise no longer had the receipts and believed they had been given to the district attorney's office much earlier in the case.[7] The deputy district attorney further stated she had reviewed the file but could not locate the receipts, and the trial attorney was no longer with the office. She further referred the court to the probation file.

The trial court ordered restitution, but limited it to $400 in light of the fact defendant was convicted of only misdemeanor vandalism.

## DISCUSSION

" ' "The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" [Citation.] However, a restitution order "resting upon a ' "demonstrable error of law" ' constitutes an abuse of the court's discretion. [Citation.]" [Citation.] "In reviewing the sufficiency of the evidence [to support a factual finding], the ' "power of the appellate court begins

---

[7] The e-mail from Smith stated:

"Good afternoon Kelly [the deputy district attorney],
"I apologize, I gave Kristen all the prices but I guess she did not forward it to you. We no longer have the receipts or any of the copies, we gave that information to the DA that was handling the prelim trials [*sic*]. At this point it has been a year and a half, here is the costs of the items that were replaced/repaired.

"Wyse terminal $400 (this is like a computer hard drive, it is what connects the branch monitor to the enterprise network)
"Monitor $170
"Repair wall $100."

6

and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]" [Citation.]

" ' "[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.]" [Citations.] "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." ' " (*People v. Sy* (2014) 223 Cal.App.4th 44, 63, quoting *People v. Millard* (2009) 175 Cal.App.4th 7, 26–27.)

We conclude there was a sufficient basis for the court's restitution order. While defendant objects that the e-mail from Enterprise consisted of "multiple levels" of hearsay, that is not an impediment to relying on this statement by Enterprise, the victim of the vandalism. (See *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 (*Keichler*) [victim statements repeated in probation report sufficient for prima facie showing and to shift burden to defendant to challenge claimed restitution]; *People v. Foster* (1993) 14 Cal.App.4th 939, 943–944 [victim claims recited in probation report provide sufficient notice to defendant for due process purposes and shift burden to defendant to challenge claimed restitution], superseded by statute on other grounds in *People v. Sexton* (1995) 33 Cal.App.4th 64, 70.)

Defendant maintains relying on a probation report, as *Keichler* permits, is different because only one level of hearsay is present. However, *Keichler* does not establish any such bright-line rule. Rather, the point of *Keichler* is that a probation report suffices to

7

shift the burden to the defendant to challenge a victim's restitution claim. (*Keichler, supra*, 129 Cal.App.4th at p. 1048.)

We see no material difference with the restitution claim outlined in the Enterprise email. As the trial court observed, because the email was addressed to the deputy district attorney, it was self-authenticating. It was also entirely reasonable that the Regional Risk Manager would speak "for" Enterprise, the victim in this case, and the claimed amounts of restitution were clearly set forth in the e-mail. Accordingly, defendant had ample notice of the claimed restitution, and the burden shifted to him to take issue with the claimed amounts if there was any legitimate basis for doing so. Indeed, given the record in the prior appeal, it is no surprise that other than challenging the facial sufficiency of the e-mail, defendant made no other challenge to the claimed restitution. As it is, defendant has ended up shouldering only $400 of the $670 in damages.

## DISPOSITION

The order awarding $400 in victim restitution is affirmed.