Filed 7/30/13  P. v. Gomez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS BANDILLA GOMEZ,<br><br>Defendant and Appellant. | H037792<br>(Monterey County<br>Super. Ct. Nos. SS101687A,<br>SS102170A) |

THE COURT:

The above captioned opinion, filed on July 2, 2013, is hereby modified as follows:  On page 14 of the opinion, at the end of the first full paragraph, insert the following footnote:

According to the probation officer's report, appellant wrote a counterfeit check to Pacific Truck Parts in the amount of $371.21 on June 14, 2010.  On June 17, 2010, appellant wrote a second counterfeit check belonging to Antonio Perez in the amount of $189.14 to Pacific Truck Parts.  The court awarded Pacific Truck Parts $560.35 in restitution based on the probation officer's representation in the sentencing memorandum that appellant "wrote numerous fraudulent checks under the name and account of Rene[] Nava for food and services in Monterey County.  The following businesses were identified and are requesting reimbursement:  [¶]  Pacific [Truck] Parts:  $560.35."  We note the inconsistencies between the two reports, but as we have explained, since appellant did not object to the quoted portion of the sentencing report, we have to presume that it is

accurate.  (*People v. Evans, supra*, 141 Cal.App.3d at p. 1021.)  Furthermore, on appellate review, all intendments are in favor of the trial court's ruling.  If there is any clear and sufficient finding on which the judgment may rest, it will be presumed in favor of the judgment and any inconsistencies will be disregarded.  (*Brewer v. Simpson* (1060) 53 Cal.2d 567, 584.)

There is no change in the judgment.

The petition for rehearing is denied.

_____
ELIA, J.

_____
RUSHING, P. J.

_____
PREMO, J.

2

Filed 7/2/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037792 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. Nos. SS101687A, SS102170A) |
| v. | |
| LUIS BANDILLA GOMEZ, | |
| Defendant and Appellant. | |

In this appeal, Luis Gomez (appellant) challenges certain victim restitution orders (Pen. Code, § 1202.4) that were imposed at a combined sentencing hearing after he entered into plea bargains in two different cases—SS101687A and SS102170A (hereafter 101687A and 102170A).[1] For reasons that follow, we affirm the judgment.

*Facts and Proceedings Below*

On August 26, 2010, in 101687A, the Monterey County District Attorney filed an 18-count information in which appellant was charged with one count of second degree robbery (Pen Code, § 211, count one, victim Juan Arate); two counts of identity theft (§ 530.5, subd. (a),[2] count two victim Rene Nava, count three victim Armando Nava); seven

---

[1] A third case, MS287961 (hereafter MS287961), was sentenced at the same time, but no victim restitution was ordered.

[2] All unspecified section references are to the Penal Code.

counts of commercial burglary (§ 459, counts four and 12 Sears, counts six and eight K-Mart, count 10 Rite-Aid, counts 14 and 16 Macy's); seven counts of false personation (§ 529.3, counts five and 13 Sears, counts seven and nine K-Mart, count 11 Rite Aid and counts 15 and 17 Macy's) and one count of mail theft (§ 530.5, subd. (e), count 18, a misdemeanor). In the information it was alleged that all the counts occurred between April and June 2010, and that appellant had served two prior prison terms within the meaning of section 667.5, subdivision (b).

Subsequently, on February 18, 2011, in 102170A, the Monterey County District Attorney filed an information in which appellant was charged with three counts of commercial burglary (§ 459 count one Salinas Valley Ford, count three Pacific Truck Parts and count five Save Mart); and three counts of submitting fictitious business checks (§ 476, count two Salinas Valley Ford, count four Pacific Truck Parts, and count six Save Mart). Again, the information contained an allegation that appellant had served two prior prison terms.

On May 4, 2011, appellant entered into a plea bargain covering both felony cases. In 101687A, appellant agreed to plead no contest to all 18 counts and admit that he had served two prior prison terms. In 102170A, appellant agreed to plead no contest to the commercial burglary of Salinas Valley Ford. In exchange for his no contest pleas to both cases, appellant was promised a state prison term of five years in 101687A and a consecutive eight month term in 102170A, the court's promise to consider section 654 issues, and the dismissal of the remaining counts and allegations in 102170A.[3]

At a combined sentencing hearing held on July 8, 2011, the court sentenced appellant to the upper term of three years on the robbery count in 101687A and concurrent two year terms on the remaining 16 felony counts. The court stayed the

---

[3]    In 101687A, appellant's maximum possible sentence was 13 years and in 102170A four years eight months.

4

sentences on the false personation counts pursuant to section 654. In addition, the court imposed two one-year terms for the two prison priors.[4] The court ordered that appellant pay various fines and fees and imposed a victim restitution order to be paid to eight different entities totaling $36,636.46. In 102170A, the court imposed an eight month prison term to be served consecutively to the term imposed in 101687A, and dismissed the remaining counts and allegations pursuant to the terms of the plea bargain.[5] The court ordered that appellant pay $872.03 in victim restitution to Salinas Valley Ford, $560.35 to Pacific Auto Parts, $96.34 to Save Mart. The court awarded $529.14 to Bank of America, but did not specify in which case it was being awarded.

On September 6, 2011, and again on October 17, 2011, appellant filed notices of appeal covering both cases and in both instances sought certificates of probable cause. On January 10, 2012, the court granted a certificate of probable cause covering both cases.

As noted, on appeal, appellant challenges certain of the victim restitution awards. Alternatively, if this court deems his challenge to the victim restitution awards forfeited, he argues that he did not receive the effective assistance of counsel. In addition, appellant contends that the abstract of judgment should be corrected to reflect the

---

[4] The court imposed a two year concurrent prison term on count 18 a violation of section 530.5, subdivision (e), which is and was charged as a misdemeanor requiring only a county jail sentence. However, the abstract of judgment does not reflect imposition of the prison term. Accordingly, given these circumstances we must conclude that Judge Duncan misspoke when he imposed a prison term.

[5] In MS287961, in which appellant had been charged with resisting arrest (§ 148) appellant was sentenced to time served.

restitution fund fine, parole revocation fine, and victim restitution award to Kohl's as orally announced by the court in 101687A.

*Discussion*

*Victim Restitution*

Appellant argues that more than $30,000 of victim restitution that the court ordered was unauthorized by governing law and/or unsupported by substantial evidence. Specifically, appellant contends that the "sentencing court awarded victim restitution for uncharged transactions and the dismissed counts in No. SS102170A totaling more than $30,000. These awards were unauthorized" because they were based on uncharged conduct or on dismissed counts for which no *Harvey* waiver[6] was entered, and were

---

[6]   In *People v. Harvey* (1979) 25 Cal.3d 754, pursuant to a plea agreement, the defendant pleaded guilty to two counts of robbery with the use of a firearm and a third count of robbery was dismissed. (*Id.* p. 757.) In sentencing the defendant to the upper term, the trial court relied upon the dismissed robbery count as an aggravating factor. Our high court held that this was error. The high court stated, "In our view, under the circumstances of this case, it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence. Count three was dismissed in consideration of defendant's agreement to plead guilty to counts one and two. Implicit in such a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that *defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count.*" (*Id.* at p. 758, italics added.) It was from the parenthetical in the quoted text that the notion of a *Harvey* waiver developed. (*People v. Goulart* (1990) 224 Cal.App.3d 71, 80.) "A defendant who signs the typical waiver form agrees to

6

inconsistent with the plea bargain. Further, no evidence supports the awards of victim restitution to Kohl's, G.E. Money Back Sony's Card, and Bank of America. Moreover, the award of $22,920.36 to six credit card companies was unauthorized because they were not "direct victims." Finally, he contends his right to due process of law was violated by the award of "tens of thousands of dollars to compensate for conduct not charged or convicted or admitted." Alternatively, trial counsel was prejudicially ineffective in failing to object to the unauthorized awards and failing to object to the awards that were not supported by substantial evidence.

Respondent counters that all the restitution claims are forfeited because appellant did not contest the factual accuracy of the restitution amounts stated in the probation report or sentencing memorandum.

*Governing Law*

The trial court is required to award restitution to a victim who has suffered economic loss as a result of the defendant's conduct. (§ 1202.4, subd. (f).) The restitution order shall be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) The restitution amount should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

---

allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges." (*Ibid.*) Typically, *Harvey* waiver language reads something akin to the following: I agree that the sentencing judge may consider my entire criminal history, the entire factual background of this case, including any unfiled, dismissed, stricken charges or allegations, and all the underlying facts of this case when granting probation, ordering restitution, or imposing sentence. (See *People v. Munoz* (2007) 155 Cal.App.4th 160, 167; *People v. Baumann* (1985) 176 Cal.App.3d 67, 74, 75.)

7

To comport with basic due process, a defendant must be given notice and the opportunity to be heard. (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1547.) Consistent with this dictate, the victim restitution statutory scheme provides that the defendant has the right to a restitution hearing "to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) The statute contemplates that the restitution amount will be determined at sentencing, unless the amount cannot be ascertained at that time. (§ 1202.4, subd. (f); see *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.)[7] The defendant's right to notice and a hearing is protected if the amount claimed by the victim is set forth in the probation report, and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing. (*People v. Cain* (2000) 82 Cal.App.4th 81, 86; see *People v. Gonzalez* (2003) 31 Cal.4th 745, 754-755.)

Generally, to preserve a restitution issue for appellate review, the defendant must raise the objection in the trial court. (*People v. Gonzalez, supra,* 31 Cal.4th at p. 755; *People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1395–1396; *In re S.S.* (1995) 37 Cal.App.4th 543, 547–548.) However, our high court has "created a narrow exception to the [forfeiture] rule for ' "unauthorized sentences" or sentences entered in "excess of jurisdiction." ' [Citation.] Because these sentences 'could not lawfully be imposed under any circumstance in the particular case' [citation] they are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citation.]" (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Our high court deemed "appellate intervention appropriate in these cases because the errors presented 'pure questions of law' [citation] and were ' "clear and correctable" independent of any factual issues presented by the record at sentencing.' [Citation.] In other words, obvious legal

---

[7]     Section 1202.4, subdivision (f) states in part, "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court."

errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not [forfeited]." (*Ibid.*)

Respondent argues that because "the trial court's factual findings . . . are at the core of appellant's complaints – then the restitution issue is forfeited by appellant's failure to object below." Appellant counters that the issue on appeal is whether the various restitution awards run afoul of section 1202.4, which among other things, prohibits the sentencing court from awarding restitution except to victims of the " 'criminal conduct for which the defendant has been convicted.' " Since appellant is not actually quibbling with the amount of certain awards, but rather is arguing that the majority of the restitution awards could not have been made in any amount because they were precluded by the terms of the governing statute, we will address this issue.

At the outset we note that appellant's argument that the victim restitution order breached the plea agreement is not properly before us. When appellant executed his Waiver Of Rights Plea Of Guilty/No Contest form in both cases, appellant acknowledged that he had a right to withdraw his plea if the trial court withdrew its approval of the plea agreement. At sentencing when the trial court indicated it would order victim restitution and gave the amounts, appellant did not object that such restitution awards would violate the plea agreement and he did not move to withdraw his plea on that ground at that time. Having been advised of his right to withdraw his plea if the trial court did not impose the promised sentence, the trial court was not required to re-advise appellant of his options or specifically afford him the opportunity to withdraw his plea at sentencing on the amount of victim restitution. (*People v. Murray* (1995) 32 Cal.App.4th 1539, 1546.) Consequently, we conclude appellant has forfeited his appellate claim that some victim restitution awards violated the plea agreement. (*People v. Villalobos* (2012) 54 Cal.4th 177, 182.)

In order to address appellant's remaining arguments it is necessary to set forth in detail the evidence adduced at the preliminary hearing in 101687A since the preliminary

9

hearing transcript was designated as the factual basis for the plea, and the factual background pertaining to how the trial court arrived at the victim restitution awards.

Officer Cruz Gonzales testified that on July 10, 2010, at approximately 8 p.m. he was at Northridge Mall in Salinas when he saw a confrontation in front of the doors to the J.C. Penney store. Officer Gonzales saw appellant come out of the door and "there was some pushing and shoving." Then, he watched as "a couple [of] people" took off running. The officer detained appellant. Later, the officer spoke to the store's security officer Michael Edington and was told that appellant attempted to leave the store with merchandise without paying for it. Edington said that he pursued appellant. As he did so, he saw appellant run toward another security officer, Juan Zarate, who ended up on the floor. Zarate shouted to Edington that appellant had pushed him. Edington testified that he "personally observed the push occur."

Postal Inspector Thang Bui testified that sometime in June 2010, a Salinas postal worker notified him of potential mail theft. Repeatedly, a man with a California's driver's license "bearing his photo and the name Rene Nava" had asked for mail for a Monroe Street address both at a Salinas post office and from an on-route mail carrier. The mail this person retrieved included letters from financial institutions; some letters appeared to contain credit cards.

Another man, who called himself Rene Nava and had identification to that effect, inquired at the Salinas post office as to why he had received notice that his mail was being forwarded to a Monroe Street address. Subsequently, Inspector Bui learned there had been fraudulent activity on this man's financial accounts. Armando Nava, Rene's brother "was having similar problems with identity theft."

Postal workers were able to copy the driver's license of the man who had represented that he was Rene Nava, as well as write down his telephone number, vehicle make and license plate number. Using this information, Inspector Bui was able to identify appellant as a suspect. After preparing a photographic lineup containing

10

appellant's photograph, Inspector Bui showed it to two postal workers; one identified appellant as the person who had come into the post office and asked for mail for a Monroe Street address, and the other identified appellant as the person who had approached him on his mail route and asked for mail for a Monroe Street address.

When Inspector Bui showed both Rene and Armando Nava a photograph of appellant, they both denied knowing him or authorizing appellant to conduct any financial transactions in their names.

As to counts four, five, 12 and 13, Inspector Bui testified that he determined that on May 11, 2010, Rene Nava's Citibank issued Sears credit card was reported stolen and a new card was sent to a residence on Alamo Way that belonged to appellant's girlfriend. This card was used to make $2667.55 in transactions at Sears on May 18, 25, and 26, 2010. The transaction that occurred on May 18 was for an oil change and involved a vehicle and telephone number that Inspector Bui had previously linked to appellant. Inspector Bui reviewed surveillance camera footage for the May 18 and 25 transactions that showed a man who appeared to the inspector to be appellant.

As to counts six, seven, eight and nine, Inspector Bui investigated transactions that occurred at K-Mart on May 21 and 23, 2010. The first transaction was made using Rene Nava's Citibank issued Sears credit card and was for $325.63. The May 23 transaction was made using Rene Nava's HSBC issued Sears credit card and was for $407.31. Again, Inspector Bui reviewed surveillance camera footage for the K-Mart transactions; again they showed a man who appeared to the inspector to be appellant making the transactions. Packaging for an item purchased in the May 23 transaction was found during a search of the residence belonging to appellant's girlfriend.

As to counts 14, 15, 16 and 17, Inspector Bui investigated several transactions that occurred on May 28 and June 1, 2010 at Macy's. These transactions were made using Armando Nava's credit card and totaled $2508.34. Again surveillance camera footage showed a man who appeared to be appellant making these transaction. Similarly,

11

Inspector Bui investigated two transactions at a Rite Aid store that occurred on May 23, 2010. These transactions were made using Rene Nava's GE Money Bank issued Wal-Mart Discover card and totaled $506.54. Again, surveillance camera footage of one of the transactions showed someone who appeared to be appellant making the purchases. Items from Macy's were recovered from the residence of appellant's girlfriend.

When the trial court asked about specific evidence to support the identity theft counts, the prosecutor confirmed they were "just kind of a blanket allegation[s] in regard to the more specific allegations."

As to 102270A, no factual basis for the plea was specified. Accordingly, all we know is that appellant pleaded no contest to commercial burglary at Salinas Valley Ford.

No *Harvey* waiver was executed in either case.

Following appellant's pleas in both cases, the probation officer's report recommended that in 101687A appellant pay restitution "to Sears in the amount of $1008.91, to Kmart in the amount of $732.94, to Rite-Aid in the amount of $901.95 and to Macy's in the amount of $4,176.55 . . . ." In addition, in 102170A, the probation officer recommended that appellant pay $872.03 to Salinas Valley Ford.

It appears that thereafter, at the court's request, the probation officer filed a Sentencing Memorandum in which the probation officer stated the following: "The defendant used a Sears Citibank MasterCard belonging to Rene[] Nava, to make multiple purchases at Sears, Kmart and an on-line purchase. Sears Citibank MasterCard reported a total loss of $2,667.55. It is requested that restitution in the amount of $2,667.55 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Kmart in Salinas, California, using a Sears HSBC MasterCard belonging to Rene[] Nava, in the amount of $407.31. It is requested that restitution in the amount of $407.31 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Best Buy Electronics in Salinas, Marina and Gilroy using a Best Buy Credit

12

Card belonging to Rene[] Nava, in the amount of $4,345.19. It is requested that restitution in the amount of $4,345.19 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Macy's in Salinas, Monterey and San Jose, California, using a Macy's card belonging to Rene[] Nava, in the amount of $1,668.21. It is requested that restitution in the amount of $1,668.21 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Macy's in Salinas and Monterey, California using a Macy's card belonging to Armando Nava, in the amount of $2,508.34. It is requested that restitution in the amount of $2,508.34 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at JCPenney's in Salinas, California using a JCPenney's card belonging to Rene[] Nava, in the amount of $3,151.92. It is requested that restitution in the amount of $3,151.92 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant used a Wal-Mart Discover card belonging to Rene[] Nava to make multiple purchases at Home Depot, Macy's, Rite-Aid and other miscellaneous purchases, including at a hair salon. Wal-Mart Discover Card reported a loss of $4,467.44 for these accounts. It is requested that restitution in the amount of $4,467.44 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant used a Wal-Mart Discover Card belonging to Armando Nava to make multiple purchases at Wal-Mart. Wal-Mart Discover Card reported a loss of $2,606.29 for these accounts. It is requested that restitution in the amount of $2,606.29 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant used a Bank of America MasterCard belonging to Rene[] Nava to make multiple purchases at Best Buy, Takken Shoes, Macy's and other miscellaneous purchases, including at a hair salon. Bank of America MasterCard reported a loss of $7,774.05 for these accounts. It is requested that restitution in the amount of $7,774.05

13

be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Kohl's Department Store using a Kohl's credit card issued to Rene[] Nava in the amount of $2,143.44. It is requested that restitution in the amount of $2,143.44 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant made purchases at Sony's Electronic Store in Gilroy, California using a GE Money Bank Sony Credit Card issued to Rene[] Nava in the amount of $4,997.72. It is requested that restitution in the amount of $4,997.72 be collected in a manner determined by the California Department of Corrections and Rehabilitation. [¶] The defendant also wrote numerous fraudulent checks under the name and account of Rene[] Nava for food and services received in Monterey County. The following businesses were identified and are requesting reimbursement:

| | |
|---|---|
| Pacific Auto Parts: | $560.35 |
| Salinas Valley Ford | $872.03 |
| Save Mart | $96.34 |

Bank of America is also requesting restitution in the amount of $529.14 for checks that were paid to CVS, Grocery Outlet and Foodsco on Bank of America belonging to Rene[] Nava."[8]

Based on the forgoing claims, as noted *ante*, the court imposed restitution orders for both cases.

Appellant argues that the sentencing court awarded victim restitution for uncharged transactions and the dismissed counts in 102170A totaling more than $30,000. Appellant contends that these amounts were unauthorized because the sentencing court had authority to award victim restitution only for the crimes of conviction. Further, there

---

[8] Appellant did not object to this portion of the sentencing report, we presume it is accurate. (*People v. Evans* (1983) 141 Cal.App.3d 1019, 1021.)

14

were no *Harvey* waivers altering this default rule and the " 'transactionally related' " exception to *Harvey* does not apply. Appellant is missing the point.

Case law indicates that losses for purposes of victim restitution are not limited to those enumerated in section 1202.4 and must be construed broadly and liberally to compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior. (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232; *People v. Crisler* (2008) 165 Cal.App.4th 1503, 1508.)

For a defendant sentenced to prison, "[c]ourts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049 (*Woods*); see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247 [construing "criminal conduct" language in section 1202.4, subdivision (f)].)

As noted, in *Harvey, supra,* 25 Cal.3d at page 758, the court held that "[i]mplicit in . . . a plea bargain . . . is the understanding . . . that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to," dismissed counts, and therefore "it would be improper and unfair to permit the sentencing court to consider any of the facts underlying . . . dismissed count[s] . . . for purposes of aggravating or enhancing defendant's sentence." To avoid the *Harvey* restriction, prosecutors often "condition[ ] their plea bargains upon the defendant agreeing that the sentencing court may consider the facts underlying the not-proved or dismissed counts when sentencing on the remainder." (*People v. Myers* (1984) 157 Cal.App.3d 1162, 1167.) Defendants may accept this relatively minor potential consequence in order to avoid other convictions or sentencing enhancement terms. (*Ibid.*) "A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted. [Citation.]" (*People v. Munoz, supra*, 155 Cal.App.4th at p. 167.)

15

Nevertheless, in this case although there was no *Harvey* waiver as to the dismissed counts, and certain transactions were not specifically charged as counts, all the restitution amounts appellant was ordered to pay arose out of the criminal activity that formed the basis of his convictions for identity theft. As this court has explained before, "section 1202.4, subdivision (f)(3) provides that '[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of the defendant's criminal conduct.*' (Italics added.) Interpreting the requirement that the damages result from the defendant's criminal conduct, the court in *People v. Jones* (2010) 187 Cal.App.4th 418, 424–427 . . . (*Jones*) held that tort principles of causation apply to victim restitution claims in criminal cases. The court observed that there 'are two aspects of causation . . . : cause in fact (also called direct or actual causation), and proximate cause.' [Citation.] The [*Jones*] court explained that ' "[a]n act is a cause in fact if it is a necessary antecedent of an event" ' and that ' "proximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " ' [Citation.]" (*People v. Holmberg*, *supra*, 195 Cal.App.4th at pp. 1320-1321.) " 'The "but for" rule has traditionally been applied to determine cause in fact. [¶] The Restatement formula uses the term *substantial factor* "to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause." ' [Citation.]" (*Id*. at p. 1321.)

The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." (*People v. Moore*, *supra*, 177 Cal.App.4th at p. 1232.) In other words, a defendant's criminal conduct must be a "but for" cause of the losses. Appellant admitted that he committed identity theft of both Rene and Armando Nava. In order to commit the crime of identity theft, appellant had to obtain and use their personal data "to obtain, or attempt to obtain, credit, goods, services, or medical information in the name of the other person

16

without the consent of that person."  (§ 530.5(a).)  Having admitted that he did just that appellant cannot now complain that transactions in which he obtained credit and goods, whether or not charged as individual counts and whether or not dismissed as part of the plea bargain, should go uncompensated.  Simply put, appellant's criminal conduct in taking the personal data of Rene and Armando Nava and using it to obtain credit and goods was a "but for" cause of the economic losses to the credit card companies and businesses for which appellant is required to pay.

Finally, as to appellant's claim that counsel was ineffective in failing to object to the restitution awards, since the restitution awards were authorized by the facts of this case we reject appellant's claim that he was denied the effective assistance of counsel. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 [a conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted.  If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails].)

*Sufficiency of the Evidence*

Appellant argues that no evidence supports the awards of victim restitution to Kohl's, G.E. Money Bank Sony's Card and Bank of America.  Appellant contends that the wholly unsubstantiated assertions in the sentencing memorandum are insufficient to support an award of victim restitution to Kohl's, G.E. Money Bank Sony's Card and Bank of America.  In essence, appellant is not challenging the amount of the award.  Rather,

17

appellant is contending that there was no evidence that it was his criminal conduct that caused the losses in the first place.[9]

There is no question that the only evidence that Kohl's, G.E. Money Bank Sony's Card and Bank of America lost money was the statement in the probation officer's sentencing memorandum to that effect.

"In reviewing the sufficiency of the evidence [to support a restitution award], the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citations.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469.)

"At the core of the victim restitution statutory scheme is the mandate that a victim who suffers economic loss is entitled to restitution and that the restitution is to be 'based on the amount of loss claimed by the victim.' Thus, a victim seeking restitution (or someone on his or her behalf) initiates the process by identifying the type of loss . . . he or she has sustained and its monetary value." (*People v. Fulton* (2003) 109 Cal.App.4th 876, 885-886.)

---

[9] Although he failed to object in the trial court, appellant asserts his argument is cognizable on appeal because, as framed, his argument is one of sufficiency of the evidence, which is not subject to forfeiture. Even if we were to disagree with appellant on this point we would address this issue as appellant has raised a claim of ineffective assistance of counsel.

18

Over the last decade or more there has been some disagreement among appellate courts as what may be considered in determining if the victim has made the required prima facie case of loss. The weight of authority sanctions the trial court's reliance on the information in the probation report to establish the victim's prima facie showing of economic losses. (*People v. Collins* (2003) 111 Cal.App.4th 726, 734 [when the probation report includes a discussion of the victim's loss and a recommendation on the amount of restitution, the defendant must come forward with contrary information to challenge that amount]; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406–1407 [absent a challenge by defendant, an award of the amount specified in the probation report is not an abuse of discretion when the report includes discussion of the victim's loss and a recommendation on the amount of restitution, the defendant must come forward with contrary information to challenge that amount]; *In re S.S.* (1995) 37 Cal.App.4th 543, 545 [in determining the amount of restitution the court can rely on itemization of losses in the probation report, though the probation officer failed to verify the information and no declaration was filed]; *People v. Foster* (1993) 14 Cal.App.4th 939, 947, superseded on other grounds as stated in *People v. Sexton* (1995) 33 Cal.App.4th 64, 70–71 [when the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount]; *People v. Hartley* (1984) 163 Cal.App.3d 126, 130, fn. 3 [since a defendant will learn of the amount of restitution recommended when he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1545 [victim made prima facie showing for restitution where probation officer's report and handwritten statement from victim listing economic losses was detailed and facially credible in explaining the costs of materials and labor for repair]; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [the trial court is entitled to consider the probation

19

report as well as factual evidence as to cost in the form of expert testimony at hearing; absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion]; see also *People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.)

On the other hand, some appellate courts, including this one, have required fairly rigorous presentation of evidence and do not find the bare probation report sufficient. (*People v. Harvest* (2000) 84 Cal.App.4th 641, 653 [probation officer's report may satisfy notice requirements for due process, but it cannot take the place of evidence where unsupported by documentation or testimony]; *In re K.F.* (2009) 173 Cal.App.4th 655, 665 [we reject any suggestion that a burden of refutation may be imposed on the defendant merely by asserting that a stated amount is sought as restitution]; *People v. Vournazos* (1988) 198 Cal.App.3d 948, 958–959 [restitution based solely on recommendation of probation officer based on his conversation with the victim insufficient to establish a prima facie claim].)

Virtually all of the appellate decisions permitting a probation report to be considered in establishing the victim's prima facie case for the losses suffered involved probation reports containing more than the bald statement of the victim. Some involved a detailed breakdown of how the losses were calculated (see, e.g., *People v. Gemelli, supra,* 161 Cal.App.4th at p. 1544), some involved a recommendation by the probation officer of the losses (see e.g., *People v. Pinedo, supra,* 60 Cal.App.4th at pp. 1406–1407; *People v. Hove, supra,* 76 Cal.App.4th at p. 1275), and some involved the presentation of additional factual evidence beyond that contained in the probation report (see, e.g., *People v. Collins, supra,* 111 Cal.App.4th at p. 734).

Nevertheless, the purpose of the restitution statute is to assist those victimized by crime. This policy goal is sufficiently important to be enshrined in the state Constitution, which states: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to

restitution from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).) Section 1202.4, subdivision (f) requires "full restitution."

Moreover, section 1202.4, subdivision (f) states that the amount of loss is to be "based on the amount of loss *claimed* by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f), italics added.) Use of the word "claimed" by the Legislature would be an unusual way of requiring the victim to prove losses, if proving the claim was intended. This wording indicates that something less than proof is required to establish the victim's economic losses and shift the burden to the defendant to challenge the amount of losses sought.

As this court has explained before, " ' "[w]hen the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." ' [Citations.]" (*People v. Holmberg*, *supra*, 195 Cal.App.4th at p. 1320.) Here, the victims' evidence of loss was fully contained in the probation officer's sentencing memorandum and was sufficient evidence of that loss. Since appellant did not present evidence sufficient to rebut this prima facie showing, "an award of the amount specified in the probation report is not an abuse of discretion. [Citation.]" (*People v. Keichler, supra,* 129 Cal.App.4th at p. 1048.)

Having determined that there was sufficient evidence of the losses sustained by Kohl's, G.E. Money Bank Sony's Card and Bank of America, we reject appellant's claim that he was denied the effective assistance of counsel. (*People v. Rodrigues, supra,* 8 Cal.4th at p. 1126.)

*Direct Victims*

Appellant argues that the award of victim restitution to six credit card companies was unauthorized because they were not direct victims of the crimes of conviction. Instead, he asserts that they were at least one degree removed from the direct victims,

21

namely the two natural persons and four merchants named in the information in 101687A.

Appellant contends that insofar as credit card companies incur economic costs by assuming losses cardholders or merchants would otherwise bear for unauthorized transactions, they are comparable to insurers or other indemnifying agencies.

The term "victim" in section 1202.4, subdivision (k)(2) is specifically defined and encompasses " '[a]ny corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity *when that entity is a direct victim of a crime*.' " (*People v. Anderson* (2010) 50 Cal.4th 19, 28.) Thus, section 1202.4, subdivision (k) permits restitution to a business or governmental entity only when it is *a direct victim* of crime. (*Ibid*.)

Accordingly, to be entitled to restitution, the credit card companies "must have (1) suffered an economic loss, and (2) be considered a 'direct victim' under the statute." (*People v. Saint–Amans* (2005) 131 Cal.App.4th 1076, 1082 (*Saint–Amans*).)

In *People v. Birkett* (1999) 21 Cal.4th 226 (*Birkett*), our Supreme Court concluded entitlement to restitution arises only in favor of " 'direct' [crime] victim[s]' . . . and insurers [do] not become such 'direct victim[s]' by reimbursing crime losses under the terms of their policies." (*Id*. at p. 229.)[10]

---

[10] *People v. Birkett* addressed restitution in the context of a probationer under former section 1203.4. This case involves a non-probationary term which is governed by section 1202.4. However, with regard to this issue, we do not believe this difference is determinative. "Although the California Supreme Court decided *Birkett* under former section 1203.04, a predecessor to section 1202.4, the Court stated that the several changes to the statute between 1994 and 1998 'do not significantly alter our analysis.' [Citation.] This is because

22

In construing the term "direct victim," our Supreme Court "has defined 'direct' as: ' "straightforward, uninterrupted, [or] immediate" in time, order or succession, or "proceeding [in logic] from antecedent to consequent, from cause to effect, etc., uninterrupted," or generally "[e]ffected or existing without intermediation or intervening agency; immediate." [Citation.]' " (*People v. Slattery* (2008) 167 Cal.App.4th 1091, 1095–1096 (*Slattery*).) The *Slattery* court rejected the People's argument that the term "victim restitution" in section 1202.4, subdivision (f), must be construed to include "all persons who suffer losses as a result of criminal activity." (Cal. Const., art. I, § 28, subd. (b)). Because section 1202.4, subdivisions (f) and (k), limited "victim restitution" to *direct* victims of crime, the court held that a hospital which treated a victim of elder

---

the statutory language limiting the right to restitution to 'direct victim' business or governmental entities remained substantively similar throughout the legislative changes. [Citation.] [¶] Neither do the amendments to 1202.4 since 1998 alter the analysis in *Birkett.* In 1999, the Legislature added subdivision (k)(2) in its current form, which expressly provides that the definition of 'victim' shall include business and government entities 'when that entity is a direct victim of the crime.' (Stats.1999, ch. 584, § 4.) The post–1999 amendments do not alter or affect subdivision (k)(2) or the 'direct victim' language. (Stats. 2000, ch. 1016, § 9; Stats. 2004, ch. 223, § 2; Stats. 2005, ch. 240, § 10.5; Stats. 2007, ch. 302, § 14.)" (*People v. Slattery*, *supra*,167 Cal.App.4th at p. 1096, fn. 2.) In the years following *Birkett*, some courts have held an insurance company may be entitled to restitution when it is the direct victim of a crime. (See, e.g., *People v. O'Casey* (2001) 88 Cal.App.4th 967; *People v. Moloy* (2000) 84 Cal.App.4th 257.)

23

abuse could not claim victim restitution for the unpaid costs of treatment, and must instead recoup its debt by a civil action. (*Slattery, supra,* 167 Cal.App.4th at p. 1097.)

By contrast, a bank that held an account from which a defendant fraudulently withdrew funds was a direct victim of defendant's commercial burglary because the bank "was the object of the crime." (*Saint–Amans, supra,* 131 Cal.App.4th at p. 1084.) This was so because "[defendant] committed his offense by entering the bank's premises at three different branches," then "deceiv[ed] the bank's employees[,] and used [its] bank account system"; thus, the bank was the entity against which defendant committed the crime. (*Saint–Amans, supra,* 131 Cal.App.4th at pp. 1086–1087.) Similarly, *People v. Bartell* (2009) 170 Cal.App.4th 1258, 1262, held that a bank that covered forged checks was a direct victim of the forgery and hence entitled to restitution.

Just last year our Supreme Court noted that "case law has ascribed a precise meaning to the phrase 'direct victim,' as that phrase has appeared in several restitution statutes. Thus, it is established that a statute 'permitting restitution to entities that are "direct" victims of crime [limits] restitution to "entities *against which* the [defendant's] crimes had been committed"—that is, entities that are the "immediate objects of the [defendant's] offenses." [Citation.]' [Citations.]" (*People v. Runyan* (2012) 54 Cal.4th 849, 856.)

Here, the credit card companies were the object of appellant's crimes of identity theft, because, as appellant concedes, they are the entities that in general suffer a loss for unauthorized transactions. (*F.T.C. v. J.K. Publications, Inc.* (C.D. Cal. 2000) 99 F.Supp.2d 1176, 1184, fn. 19 [when a card holder complains of unauthorized charges, the card holder can receive a reimbursement by chargeback or credit. If the issuing bank accepts the complaint from a customer who disputes a charge on his or her account statement, it will reverse or charge back the transaction through the credit or debit card interchange. The chargeback causes a debit to be placed on the merchant's account at its bank and a credit on the customer's account at the issuing bank. A fee against the

24

merchant account is ordinarily assessed for each chargeback. Alternatively, a credit can be given to the card holder by the merchant directly (whereby the merchant agrees to reimburse the card issuer), or it can be given by the card issuer (where the issuing bank absorbs the cost of the unauthorized charge)].)

Appellant applied to the credit card companies under the name of Rene Nava and Armando Nava in order to obtain credit cards in their names. Having done so he obtained goods and services for which he had no intention of paying. While Rene and Armando Nava were victims of the identity theft counts in the sense that it was their personal information that was obtained by appellant, appellant used their information to obtain credit cards he had no right to obtain. He was, in essence, defrauding the credit card companies.

We do not read the Supreme Court's construction of the victim restitution statutes as requiring that a victim be the "object" of the crime in the sense that the defendant's criminal conduct was specifically directed to that individual or entity. In addition to describing the "victim" as being one who is the object of a crime (*Birkett, supra,* 21 Cal.4th at p. 233; *People v. Crow* (1993) 6 Cal.4th 952, 957), the court has also stated that victims entitled to restitution are those who are "the real, actual, immediate, and direct victims of crime. . . ." (*Birkett, supra,* at p. 243.) In *Birkett,* the court defined "actual" as " '[e]xisting in . . . fact; . . . real, . . .' [citation]" (*id.* at p. 233, fn. 5); and "direct" as " 'straightforward, uninterrupted, [or] immediate' in time, order or succession, or 'proceeding [in logic] from antecedent to consequent, from cause to effect, etc., uninterrupted,' or generally '[e]ffected or existing without intermediation or intervening agency; immediate.' [Citation.]" (*Id.* at p. 233, fn. 6.) In light of these definitions, the credit card companies were unquestionably actual and direct victims of appellant's criminal conduct. They were undoubtedly "real" entities that suffered as a result of appellant's actions; losses were a "straightforward, uninterrupted, [or] immediate" consequence of appellant's criminal conduct.

Accordingly, we conclude that since appellant admitted two counts of identity theft whereby he obtained credit cards that he used to obtain goods and services, the credit card companies were the direct victims of his crimes and therefore entitled to victim restitution.

That being said, we reject appellant's claim that his counsel was ineffective in failing to object to the award of restitution to the six credit card companies. (*People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1126.)

*Assignment of Civil Liability in Excess of Jurisdiction*

Appellant argues that the awards of victim restitution for conduct for which he was not convicted nor admitted amounted to an assignment of civil liability in excess of the sentencing court's jurisdiction and violated his due process rights. As we have explained *ante,* the sentencing court did not act in excess of its jurisdiction in awarding restitution to all the victims in this case, because all the awards were compensation for economic losses that were the result of the appellant's criminal conduct in stealing the Navas' identities. (§ 1202.4, subd. (f).) As to his argument that his due process rights were violated, this claim with regard to victim restitution was not preserved by objection below. (Cf. *People v. Foster* (2010) 50 Cal.4th 1301, 1321–1322 [failure to object at trial to stun belt restraint forfeited constitutional challenges]; *People v. Catlin* (2001) 26 Cal.4th 81 [failure to object at trial to evidence admitted at penalty phase forfeited claim that admission violated due process].)

If not adequately preserved, appellant counters that trial counsel was ineffective in failing to object. Appellant argues there was no conceivable tactical benefit flowing from this failure.

To successfully assert a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors there is a reasonable probability that the

26

result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215–218.)

As *Strickland* advises, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland*, *supra*, 466 U.S. at p. 697.)

We conclude that there was no ineffective assistance of counsel here because for all the reasons outlined *ante* there is no reasonable probability that the result would have been more favorable to defendant had his counsel objected.

*Restitution Fund Fine, Parole Revocation Fine, and Victim Restitution to Kohl's*

In sentencing appellant in 101687A, the court imposed a restitution fund fine in the amount of $1000 (§ 1202.4, subd. (A)(b)(1)), and a parole revocation fine in the same amount (§ 1202.45). In addition, the court ordered that appellant pay $2042.44 in victim restitution to Kohl's. However, both the clerk's minute order from the sentencing hearing and the abstract of judgment reflect a restitution fund fine and parole revocation fine of $3600. As to the award to Kohl's, the clerk's minute order reflects that the amount is $2143.44.[11] Appellant requests that we order the abstract of judgment and the minute order corrected to reflect the amounts as orally imposed by the court. Respondent does not object.

Where a minute order or abstract of judgment differs from the court's oral pronouncements, the minute order does not control. Any discrepancy is deemed to be the result of clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3; *People v. Price* (2004) 120 Cal.App.4th 224,

---

[11] The abstract of judgment does not specifically list the restitution amounts to the different entities, but references the probation officer's report for the names of the victims. In turn the probation officer's report lists the award to Kohl's as $2,143.44.

27

242.) "[T]he clerk's minutes must accurately reflect what occurred at the hearing." (*People v. Zachary* (2007) 147 Cal.App.4th 380, 388.) "The clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order and the abstract of judgment. [Citation.]" (*Id.* at pp. 387–388.) Errors in the abstract of judgment may be corrected by this court on appeal. (*People v. Mitchell, supra,* 26 Cal.4th at p. 185; *People v. Garcia* (2008) 162 Cal.App.4th 18, 24, fn. 1.) Accordingly, we will order that the abstract of judgment be corrected to reflect a restitution fund fine of $1000 and a parole revocation fine in the same amount. (§ 1202.45 [parole revocation fine must be assessed in the same amount as that imposed pursuant to subdivision (b) of section 1202.4].) Additionally, the clerk's minute order from the sentencing hearing must be corrected to show the victim restitution award to Kohl's as $2,042.44.

*Disposition*

The judgment is affirmed. However, the clerk of the court is directed to modify the abstract of judgment and the clerk's minute order from the sentencing hearing held on July 8, 2011, to reflect a restitution fund fine of $1000 and parole revocation fine in the same amount. With respect to the restitution award to Kohl's, the clerk of the court is directed to amend the minute order from the sentencing hearing and to amend the abstract of judgment to specifically reflect an award to Kohl's in the amount of $2,042.44. The clerk of the court is directed to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____

ELIA, J.

WE CONCUR:

28

_____

RUSHING, P. J.



_____

PREMO, J.